FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 01, 2019

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RACHEL B.,<br>                    Plaintiff,<br><br>     vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 1:18-cv-03026-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

ORDER - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER - 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability. *Id*. The claimant has the burden of showing that DAA is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

# ALJ'S FINDINGS

On September 12, 2014, Plaintiff applied for supplemental security income benefits alleging a disability onset date of August 4, 2014. Tr. 215-20. The application was denied initially, Tr. 140-44, and on reconsideration, Tr. 153-56. Plaintiff appeared before an administrative law judge (ALJ) on January 18, 2017. Tr. 69-102. On March 9, 2017, the ALJ denied Plaintiff's claim. Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 12, 2014. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: type 1 diabetes on insulin pump; right deQuervain's tenosynovitis; posttraumatic stress disorder (PTSD); major depressive disorder; methamphetamine abuse; cannabis use disorder; and benzodiazepine dependence. Tr. 17. At step three, the ALJ found Plaintiff's mental impairments, considering her substance abuse disorders, meet sections 12.04 and 12.15 of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. However, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ then concluded that if Plaintiff stopped the substance use, Plaintiff would have the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, and scaffolds and
> can frequently kneel, crouch, and crawl. She is limited to frequent

handling and fingering. She is limited to occasional exposure to extreme cold and to vibration and is limited to occasional exposure to hazardous conditions such as proximity to moving machinery and unprotected heights. [Plaintiff] is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes. She is limited to occasional and superficial public interaction. [Plaintiff] is able to interact with co-workers on a casual or superficial basis, but would not do well as a member of a highly interactive or interdependent work group.

Tr. 22.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 29. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, production line solderer, electrical accessories assembler, and inspector/hand packager. Tr. 30. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the application date of September 12, 2014, though the date of the decision. Tr. 30.

On December 19, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly determined that her substance-use disorder is a material contributing factor to the determination of disability;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ properly evaluated the medical opinion evidence; and ECF No. 15 at 1.

**DISCUSSION**

**A. Substantial Evidence of Drug and Alcohol Abuse (DAA)**

Plaintiff challenges the ALJ's finding that Plaintiff's substance abuse materially contributed to her limitations. ECF No. 15 at 4-12. Social Security claimants may not receive benefits where DAA is a material contributing factor to disability. 20 C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(c). DAA is a material contributing factor if the claimant would not meet the SSA's definition of disability if the claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). Plaintiff has the burden of showing that DAA is not a material contributing factor to disability. *See Parra*, 481 F.3d at 748. Here, the ALJ found that Plaintiff's drug abuse ended no sooner than March 2016. Tr. 18.

As an initial matter, the record provides substantial evidence to support the ALJ's finding that Plaintiff used drugs. The medical record reflects that Plaintiff was not straightforward about her marijuana, methamphetamine, or prescription use. Plaintiff frequently reported that she neither used drugs nor had a history of abusing drugs. Tr. 455-70, 339-44, 372-97, 333-37, 330-31. But in October 2014, she tested positive for cannabinoids, in addition to the prescribed amphetamine and benzodiazepine. Tr. 377, 387. On two other occasions, within days of denying that she used drugs, Plaintiff tested positive for methamphetamines. Tr. 990, 960-61, 883. Later Plaintiff would frequently admit she used marijuana either daily or occasionally. Tr. 403, 863, 915, 789-19, 1138-44, 1153-60, 1086-1101, 1492-52, 1121-30. For instance, during her initial assessment in January 2016 with Central Washington Comprehensive Mental Health, Plaintiff denied any abuse or history of abusing drugs, other than using marijuana three times a day. Tr. 862-63; *see also* Tr. 858, 863. Then in February 2016, she admitted to recent methamphetamine use. Tr. 697. In March 2016, she admitted previous drug and narcotic pain prescription abuse but submitted that she had been clean for the past month. Tr. 1213. In June 2016, Plaintiff reported that she self-discontinued all prescriptions in October 2015 and began self-medicating with street drugs, including methamphetamines, from about October to November 2015. Tr. 915, 925; *see also* Tr. 915, 931 (reflecting the time period that Plaintiff initially tried

lamotrigine).  Plaintiff also admitted that she continued to use marijuana nearly daily for PTSD and chronic backpain.  Tr. 915.  Based on this record, the ALJ reasonably concluded that Plaintiff abused substances from at least October 2014 through March 2016.  Tr. 18.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (recognizing that even where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld).  That Plaintiff continued to use marijuana after March 2016 does not affect the ALJ's rational ruling that Plaintiff's methamphetamine and prescription abuse materially contributed to her mental-health limitations during the alleged disability period.

Plaintiff argues the ALJ mischaracterized her substance abuse, submitting that the record reflects that Plaintiff was frequently upfront with her providers about her cannabis use, which is legal in Washington; her use of methamphetamine was for self-medication purposes; and the other narcotics, which she tested positive for, were prescribed.  ECF No. 15 at 5.  However, regardless of whether marijuana is legal for personal use in Washington, the ALJ was required to assess whether Plaintiff's marijuana use, methamphetamine use, and prescription pain abuse materially contributed to her disability.  Plaintiff's medical providers themselves referred to Plaintiff's drug use as abuse.  *See, e.g.*, Tr. 435, 1089, 1128, 1150, 1154 ("abuses marijuana"; Tr. 856 ("history of substance abuse"); Tr. 928 ("cannabis

abuse"). On this record, the ALJ's finding that Plaintiff abused drugs is rational, supported, and not a mischaracterization of Plaintiff's substance abuse.

Next, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's drug abuse materially contributed to Plaintiff's disability. Here, the record reflects that during the period Plaintiff abused drugs she was more regularly anxious, depressed, tearful, upset, and presented with labile, blunt, or verbose affect, dysphoric mood, rapid speech, and vague and circumstantial reporting. Tr. 956, 941, 945-46, 923-24, 929, 935. Also, during the period that Plaintiff abused drugs, she reported "falling apart," Tr. 934; needing help with everything, Tr. 934; being unable to sleep and eat, Tr. 928; and being tearful with poor energy and no desire to eat much during the day, Tr. 864.

The ALJ cited to substantial evidence in the record that once Plaintiff stopped abusing drugs her functioning substantially improved. Tr. 21. Plaintiff's memory, attention, and concentration were intact in June, July, August, September, October, November, and December 2016. Tr. 881, 887, 892, 898, 903, 911, 916. Likewise, Plaintiff consistently presented as clean and casually dressed from June to December 2016. Tr. 881, 887, 892, 898, 903, 911, 916. Plaintiff's normal appearance, memory, attention, and concentration support the ALJ's rational finding that Plaintiff had no more than a moderate limitation in understanding, remembering, and applying information and adapting or managing herself when

she stopped abusing drugs, as compared to her marked limitations in these abilities when she abused drugs.  Tr. 19-21.

Plaintiff contends that medical evidence after March 2016 shows that she still had marked limitations.  ECF No. 15 at 5-6.  But one of the records cited by Plaintiff was during March 2016, *see* Tr. 1215, and others related to situational stressors that Plaintiff was dealing with, *see* Tr. 693-94 (reporting a recent assault); Tr. 921-22 (anxious and tangential due to chaos within her family and need to find her own housing); Tr. 1212 (mildly distressed, agitated, and anxious over wanting to be on an insulin pump and her brother's serious illness); Tr. 907 (dealing with stress of brother returning to live in the same house); Tr. 920 (dealing with detoxing from her medications and building relationship with her mom); Tr. 971 (mildly distressed and dealing with sinus issues); Tr. 977 (mildly distressed and dealing with recovering from pneumonia).  The other cited post-March 2016 records are consistent with the ALJ's moderate-limitation finding relating to Plaintiff's abilities to interact with others and adapt or manage herself.  *See* Tr. 859 (Plaintiff will continue to experience anxiety for at least six months.); Tr. 977, 981 (active, alert, anxious, orientated, mild distress); Tr. 909 (presented with a slightly uplifted mood and congruent affect); Tr. 891 (reporting that her depressive symptoms are adequately treated with medication but still bothered by anxiety; presented as orientated, alert, and cooperative with speech at normal rate and

volume and neutral mood and constricted affect); Tr. 981 (mildly distressed and

anxious though orientated, active, and alert); Tr. 1205 (mildly distressed with good

insight); Tr. 880-81, 886-87, 892, 898 (orientated, speech within normal limits,

neutral mood, constricted affect, fair insight and judgment, and reporting that her

anxiety is better). Thus, the record reflects that after Plaintiff stopped abusing

methamphetamine and prescription pills, her mental-health conditions improved.

While Plaintiff endorsed self-harm thoughts the two months after she self-

discontinued medication, she did not have any plan or intent and appeared genuine

and otherwise had normal mental status exams. Tr. 892, 898, 902, 903, 920. The

ALJ's finding that Plaintiff was moderately limited (rather than markedly limited)

in her abilities to interact with others and adapt or manage herself when she was

not abusing methamphetamine and prescription pills, in addition to marijuana, is

rational and supported by the record. Tr. 19-21. The ALJ's conclusion that

Plaintiff did not meet her burden to show that her substance abuse did not

materially contribute to her disability is supported by the record.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 15 at 16-20.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL

1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient. The ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.*; *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication the claimant takes or taken to alleviate pain or other

symptoms; 5) treatment, other than medication, the claimant receives or received

for relief of pain or other symptoms; 6) any measures other than treatment the

claimant uses or used to relieve pain or other symptoms; and 7) any other factors

concerning the claimant's functional limitations and restrictions due to pain or

other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-

(3).  The ALJ is instructed to "consider all of the evidence in an individual's

record" "to determine how symptoms limit ability to perform work-related

activities."  SSR 16-3p, 2016 WL 1119029, at *2.

While the ALJ determined that Plaintiff's medically determinable

impairments could reasonably be expected to cause some of the alleged symptoms,

the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and

limiting effects of the symptoms.  Tr. 23.

*1. Inconsistent with Objective Medical Evidence*

The ALJ found the severity of Plaintiff's symptom claims unsupported by

the objective medical evidence. Tr.  23-24.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Here, the ALJ found that Plaintiff's reported significant upper extremity dysfunction, diabetes symptoms, and symptoms related to her mood disorder and PTSD were not as severe as she claimed. Tr. 23-24.

First, as to Plaintiff's upper extremities, a nerve conduction study in June 2014 was normal, Tr. 427; during a December 2014 emergency room visit, Plaintiff had intact range of motion in all extremities, intact sensation, steady gait, and intact motor functioning, Tr. 353-53; during a February 2015 exam, Plaintiff had normal range of motion, normal sensory function, and normal elbow and wrist findings other than some bilateral wrist and neck tenderness, Tr. 436-37; and Plaintiff had normal motor strength, normal movement of extremities, and normal ambulation in September 2015 and May 2016, Tr. 1129, 986, 1146-47. The ALJ noted that Plaintiff's wrist x-rays in September 2015 were normal, Tr. 438, 442, and the September 2016 neurological examination was normal, Tr. 1023. X-rays in October 2015 of the pelvis and hips were unremarkable. Tr. 671. Consistent with Dr. Kopp and Dr. Haynes' December 2014 opinion that Plaintiff's physical limitations would improve, Tr. 429-30, 432, the more recent evidence indicates

that Plaintiff's exertional and manipulation limitations did improve and are not as severe as claimed by Plaintiff.

Second, as to Plaintiff's diabetes, the ALJ concluded that the condition caused some physical limitations, but they were not as severe as Plaintiff alleged. Tr. 24. The ALJ determined that, when Plaintiff managed her diabetes and took gabapentin as prescribed, Plaintiff experienced normal gait, motor strength, and tone. Tr. 24 (citing Tr. 1097-98, 790-91, 971-72).

Third, the ALJ concluded that the medical evidence indicated that Plaintiff's mood disorder and PTSD were not as limiting as she alleged during periods of sobriety. Tr. 24. For instance, from June through December 2016, Plaintiff's memory, concentration, and attention were intact, she showed full/congruent to constricted/mild affect, normal speech, and neutral mood. Tr. 983 (May 2016: reporting that she is doing better after ceasing benzodiazepines in February 2016 and starting trauma therapy); Tr. 887, 892, 897-98, 903, 911, 916 (June to Nov. 2016: alert; cooperative; mild/constricted to congruent/full affect; neutral mood; normal speech; intact memory, attention, and concentration; logical and linear thought form; and fair insight and judgment). Plaintiff submits that the record shows that her mental-health symptoms waxed and waned. ECF No. 15 at 17-18. While waxing and waning of mental-health symptoms is common, the objective medical evidence establishes that Plaintiff's mental health symptoms fluctuated

significantly before the spring of 2016 because Plaintiff abused drugs and was not engaging in therapy, and then after the spring of 2016, Plaintiff's mental-health symptoms were relatively stable and moderate. Tr. 887, 892, 897-98, 903, 911, 916.

Based on this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's allegations of disabling limitations.

### 2. *Effective Treatment*

The ALJ discounted Plaintiff's reported symptoms because her physical and mental health improved with medication and therapy. Tr. 24. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Here, the ALJ noted that Plaintiff's diabetes symptoms quickly resolved with medical treatment. Tr. 24 (citing Tr. 1097-98, 790-91, 971-72). As to Plaintiff's mental-health symptoms, Plaintiff had significant improvement when restarting her mental-health therapy, consistently using medications, and ending methamphetamine and prescription abuse. Tr. 24 (citing Tr. 886); *see also* Tr. 880; 887, 892, 897-98, 903, 911, 916. The record supports the ALJ's conclusion that

Plaintiff's impairments were not as limiting as Plaintiff claimed when treated with medication and therapy.

Plaintiff argues however that because the ALJ's analysis about Plaintiff's diabetes contained an incomplete sentence the ALJ's decision that Plaintiff's diabetes was not as limiting as claimed was unsupported. ECF No. 15 at 17 (citing Tr. 24 ("This evidence indicates that the diabetes causes occasional difficulties but does not . . . .[omission in original]"). Notwithstanding this incomplete sentence, the ALJ's decision, when read in its entirety, adequately explains the ALJ's finding that when Plaintiff complied with the recommended diet, took gabapentin as prescribed, ceased drug abuse, and otherwise complied with treatment recommendations, her diabetes was not as limiting as Plaintiff reported. Plaintiff also argues the ALJ failed to recognize that Plaintiff complained of medication side effects and that medication was ineffective. ECF No. 15 at 18-19. However, the cited records either pre-dated March 2016 (and therefore were during a period when Plaintiff was using methamphetamine or not taking medications as prescribed), *see* Tr. 454, 478-82, 508, 515, 542, 923, 928, 934, 941, 943, 952, 957, or related to a side effect that was later resolved by a medication change, *see* Tr. 906, 880, 891, 897-99. Moreover, Plaintiff admitted that during her drug-use period she would fabricate a medication side-effect in order to discontinue use of a medication. Tr. 902. The ALJ's decision to discount Plaintiff's reported mental

and physical symptoms because the medical evidence reflected that her conditions improved by medication management and therapy is a clear and convincing reason to discount Plaintiff's reported symptoms.

### 3. Failure to Follow Treatment Recommendations

The ALJ discounted Plaintiff's reported symptoms because she did not consistently comply with treatment advice. Tr. 25. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, the ALJ found that Plaintiff did not consistently comply with medical advice for her diabetes and mental health. Tr. 25. While Plaintiff's self-management of her diabetes improved in the spring of 2016, Plaintiff herself recognized that she had not previously attended to her diabetes. *See, e.g.*, Tr. 339 (admitting that she is not taking good care of her diabetes and that she is noncompliant with home glucose monitoring); Tr. 1209, 1213 (wanting to get back on the insulin pump to better control sugars); *see also* Tr. 1097 (noting that while Plaintiff was in the hospital to address diabetes she routinely ate foods that were not part of her carbohydrate-controlled diet). As to Plaintiff's mental health, the ALJ noted that Plaintiff admitted in June 2016 that she was off all medications, thereby suggesting that her symptoms were not as limiting as she claimed. Tr. 25 (citing Tr. 920); *see*

*also* Tr. 902 (Medical provider cautioned Plaintiff to stop her self-discontinuation of medication because it made it difficult for the provider to determine the level of benefit that Plaintiff received from the medication.). The ALJ's finding that Plaintiff did not consistently comply with treatment advice is rational, supported, and constitutes a clear-and-convincing reason to discount Plaintiff's reported symptoms.

### 4. Exaggeration

The ALJ also found Plaintiff's symptom claims not credible because she exaggerated and fabricated her symptoms. Tr. 25. The tendency to exaggerate is a permissible reason to discount a claimant's symptom claims. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Moreover, in evaluating symptom claims, the ALJ may utilize ordinary evidence-evaluation techniques, such as considering prior inconsistent statements. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that Plaintiff was noted in October 2014 to be very histrionic and endorsed pain anywhere she was touched even though there was no external evidence of an acute injury, Tr. 374-75; and on another occasion, Plaintiff was a vague, contradictory, and tangential history, Tr. 928, 934-35. Plaintiff also admitted fabricating information to gain a desired outcome. Tr. 902 (admitting she fabricated medication side-effects to cease taking a medication). While Plaintiff challenges the ALJ's reliance on the observations of consultative

examiner Dr. Toews, the afore-mentioned exaggeration, inconsistencies, and fabrications are supported by the record and serve as a clear-and-convincing reason to discount Plaintiff's reported symptoms.

   5.  *Inconsistent Statements Regarding Drug Use and Drug-Seeking Behavior*

   The ALJ discounted Plaintiff's symptom claims because she misreported her use of drugs and engaged in drug-seeking behavior.  Tr. 26.  Drug-seeking behavior and conflicting inconsistent statements about drug use are appropriate grounds for the ALJ to discount a claimant's reported symptoms.  *Thomas*, 278 F.3d at 959; *Edlund*, 253 F.3d at 1157; *Gray v. Comm'r, of Soc. Sec.*, 365 Fed. App'x. 60, 63 (9th Cir. 2010); *Lewis v. Astrue*, 238 Fed. App'x. 300, 302 (9th Cir. 2007); *Morton v. Astrue*, 232 Fed. App'x. 718, 719 (9th Cir. 2007).  Here, the ALJ found that, while the evidence indicated that Plaintiff used marijuana and methamphetamine and abused prescription medications from October 2014 until early 2016 and then continued to use marijuana, Tr. 915, Plaintiff either repeatedly abused drugs or gave inconsistent statements about her drug use.  Tr. 18, 26.  As explained *supra* in the DAA section, the ALJ's finding in this regard is supported by substantial evidence.  While Plaintiff frequently reported that she neither used drugs nor had a history of abusing drugs, Tr. 455-70, 339-44, 372-97, 333-37, 330-31, she nonetheless tested positive for drugs beyond those prescribed.  Tr. 377, 387, 990, 960-61, 883; *see also* Tr. 1108 (noting that the "historian" reported that

ORDER - 23

Plaintiff had methamphetamine abuse, marijuana abuse, and prescription drug abuse). The record reflects that Plaintiff became more upfront about her drug usage in 2016. In February 2016, Plaintiff admitted to recent methamphetamine use, Tr. 697, and then in March 2016, she admitted previous drug and narcotic pain prescription abuse and reported that she had been clean for the past month, Tr. 1213. In June 2016, Plaintiff reported that she self-discontinued all prescriptions in October 2015 and began self-medicating with street drugs, including methamphetamine, from about October to November 2015. Tr. 915, 925; *see also* Tr. 915, 931. Plaintiff also admitted that she continued to use marijuana nearly daily for PTSD and chronic backpain. Tr. 915. Based on a complete review of the record, Plaintiff's inconsistent reports since the alleged disability onset date of August 4, 2014, about her drug use and drug-seeking behavior constitutes a clear-and-convincing reason, supported by the record, to discount Plaintiff's reported symptoms.

### 6. *Inconsistent with Plaintiff's Daily Activities*

Finally, the ALJ found Plaintiff's symptom claims inconsistent with her daily activities. Tr. 25. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. As to Plaintiff's exertional and manipulation abilities, the ALJ noted that Dr. Toews observed Plaintiff use her phone repeatedly, handle small blocks, sling a backpack containing medications and other items over her shoulder with ease, and walk with a normal gait. Tr. 408. The ALJ also noted that Plaintiff was observed to text with both hands in February 2015. Tr. 436. The ALJ also highlighted that Plaintiff was able to push a car over a hill in September 2015. Tr. 1112. As to Plaintiff's mental impairments, the ALJ highlighted that Plaintiff advised Dr. Toews she would travel with a man she just met. Tr. 399-422. The ALJ also noted that Plaintiff considered returning to school in August 2016, Tr. 907, and in November 2016, Plaintiff was socializing more and was in a new relationship, Tr. 885. Plaintiff challenges the accuracy of Dr. Toews' observations on the grounds that Dr. Toews is biased against claimants. ECF No. 15 at 15-16. However, the Court need not resolve Plaintiff's challenge to Dr. Toews' observations because any error made by the ALJ when assessing whether Plaintiff's daily activities were inconsistent with

her reported limitations is harmless as the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).  Therefore, because the ALJ provided other clear-and-convincing reasons for discounting Plaintiff's reported symptoms*, see supra*, the Court need not resolve whether the ALJ appropriately relied on Dr. Toews' observations about Plaintiff's abilities, Plaintiff's indicated desire to attend college, or other reported activities as inconsistent with Plaintiff's claimed abilities.

**C. Medical Opinion Evidence**

Plaintiff faults the ALJ for improperly discounting the opinions of Matthew Johnson, M.D.; James Kopp, M.D., James Haynes, M.D, and Maria Mondragon,

L.C.S.W. and for relying on an improper basis for assigning limited weight to the opinion of Jay Toews, Ed.D. Tr. 11-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161; *see* 20 C.F.R. § 416.902[1]. However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f).[2] An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

*1. Dr. Johnson*

Dr. Johnson treated Plaintiff for several years until April 2015. Tr. 472-549, 950, 983, 990-1002. Dr. Johnson completed four state disability evaluation forms.

_____

[1] Before March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 416.913.

[2] Before March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. § 416.913(d).

ORDER - 28

Tr. 603-05 (July 12, 2012); Tr. 610-13 (Jan. 2 and 18, 2013); Tr. 606-08 (Dec. 27, 2013); Tr. 598-99 (Feb. 19, 2015). Three of these forms were before Plaintiff's alleged disability onset date of August 4, 2014. On the 2015 form, Dr. Johnson diagnosed Plaintiff with severe anxiety and depression, PTSD, ADD, chronic pain, and a recent concussion. Tr. 598. Dr. Johnson opined that Plaintiff was severely limited as she was unable to lift at least two pounds or stand or walk, she was unable to focus or concentrate, and that she had trouble with social settings and therefore was not able to work. Tr. 598-99. Similarly, on the 2012 and 2013 evaluation forms, Dr. Johnson opined that Plaintiff was either severely limited or limited to sedentary work because of her chronic pain and mental-health conditions, which impacted her ability to concentrate. Tr. 603-04, 606-07, 610-11.

The ALJ assigned very light weight to Dr. Johnson's opinions. Tr. 27-28. Because Dr. Johnson's opinions were contradicted by the opinions of the State agency doctors Matthew Comrie, Psy.D., Tr. 113-15, and Bruce Eather, Ph.D., Tr. 131-32, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Johnson's opinions. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Johnson's "severely limited" opinion and his opinion that Plaintiff was limited to sedentary work because they were not supported by the objective medical evidence. Tr. 28. Factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion

and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631; 20 C.F.R. § 416.927(c)(4). A medical opinion may be rejected if it is unsupported by medical findings and treatment notes. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tommasetti*, 533 F.3d at 1041; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). First, the ALJ's decision to discount Dr. Johnson's opinion that Plaintiff was "severely limited," i.e., "[u]nable to lift at least [two] pounds or unable to stand or walk," is supported by substantial evidence. Tr. 28. For instance, a nerve conduction study in June 2014 was normal, Tr. 427; x-rays of Plaintiff's wrists in September 2015 were normal, Tr. 438, 442; and the September 2016 neurological examination was normal, Tr. 1023. Moreover, when not recovering from acute physical injuries, Plaintiff had intact range of motion in all extremities, intact sensation, steady gait, and intact motor functioning, Tr. 353-53, 437, 489-93, 986. Likewise, that Dr. Johnson frequently observed Plaintiff ambulating normally is inconsistent with Dr. Johnson's 2012 sedentary opinion. *See, e.g.*, Tr. 478, 487, 493, 497, 503, 507, 518, 522, 997, 1001. In addition, Dr. Johnson marked that his sedentary opinion was not supported by testing or lab reports. Tr. 603. Plaintiff also did not cite any medical records that support Dr. Johnson's sedentary opinion. Based on the objective medical evidence, the ALJ's decision to discount Dr. Johnson's extreme opinions relating

to Plaintiff's exertional abilities because they were inconsistent with the objective findings is a legitimate and specific reason supported by the record.

Second, the ALJ discounted Dr. Johnson's opinion that Plaintiff is "severely limited" because it was contradicted by the observations of Plaintiff's actual functioning. Tr. 28. A physician's opinion may be rejected if it is unsupported by treatment notes and findings. *Bray*, 554 F.3d at 1228; *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, even when Dr. Toews' challenged observations are disregarded, the record still supports the ALJ's rational decision to discount Dr. Johnson's opinion on the grounds that it is not supported by the clinical observations of Plaintiff's functioning. When not recovering from acute physical injuries, Plaintiff was observed with intact range of motion in all extremities, intact sensation, steady gait, and intact motor functioning. Tr. 353-53, 437, 489-93, 986. After a February 2015 accident, Plaintiff was observed with a limp but was also observed texting with both hands, not in pain, and with normal range of movement in her extremities. Tr. 1155-56, 697-98. Moreover, Dr. Johnson's later observations of Plaintiff reflected that Plaintiff was ambulating normally. Tr. 482, 997, 1001.

Third, the ALJ discounted Dr. Johnson's sedentary opinion because it appeared to be based more on Plaintiff's pain complaints rather than objective evidence. Tr. 28. A physician's opinion may be rejected if it based on a

claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149;

*Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*,

885 F.2d at 604. However, when an opinion is not more heavily based on a

patient's discounted self-reports than on clinical observations, there is no

evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v.*

*Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). As

discussed, *see supra*, Plaintiff's symptom complaints were properly discounted and

Plaintiff failed to establish that the objective medical evidence, including Dr.

Johnson's clinical findings, supports Dr. Johnson's sedentary opinion. Therefore,

the ALJ's decision to discount Dr. Johnsons' sedentary opinion because it

appeared to be more heavily based on Plaintiff's properly discounted subjective

complaints rather than objective medical findings is supported by substantial

evidence and is a legitimate and specific reason for discounting Dr. Johnson's

sedentary opinion.

Finally, the ALJ discounted Dr. Johnson's opinions because he did not

include any objective clinical findings to support his opinions. Tr. 28. Factors to

evaluating a medical opinion include the amount of relevant evidence that supports

the opinion, the quality of the explanation provided in the opinion, and the

consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at

1042; *Orn*, 495 F.3d at 631. A medical opinion may be rejected by the ALJ if it is

conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Here, Plaintiff argues that the ALJ was silent as to Dr Johnson's findings that Plaintiff could not work full-time and was unable to focus or concentrate. ECF No. 15 at 8-9. However, the ALJ's statement that "Dr. Johnson's reports do not include any objective clinical findings to support his opinions," Tr. 28, applies to Dr. Johnson's opinions about Plaintiff's inability to work full-time and inability to focus or concentrate, as the ALJ previously discussed that Dr. Johnson's "severely limited" and sedentary opinions were not supported by the record, Tr. 27-28. *Cf. Hill*, 698 F.3d at 1160 (reversing the ALJ because the ALJ failed to address a medical opinion that the claimant was unlikely to sustain full-time employment). The ALJ's decision to discount Dr. Johnson's opinions about Plaintiff's inability to work full-time, focus, or concentrate is supported by substantial evidence. First, the evaluation forms do not mention what observations, clinical findings, or tests Dr. Johnson relied on in reaching his opinions. Tr. 603-05, 610-13, 606-08, 598-99. Second, while Dr. Johnson's treatment notes reflect that Plaintiff's anxiety waxed and waned, her recent and remote memory were normal; moreover, Plaintiff was abusing drugs when Dr. Johnson treated her, thereby materially impacting her mental symptoms. *See, e.g.,* Tr. 522 (Sept. 15, 2014: normal mood and affect; recent and remote memory normal); Tr. 518 (Oct. 7, 2014: anxious, recent and remote memory normal); Tr.

507 (Oct. 31, 2014: normal mood and affect; recent and remote memory normal); Tr. 503 (Nov. 20, 2014: recent and normal memory normal); Tr. 497 (Dec. 2, 2014: normal mood and affect; recent and remote memory normal); Tr. 489 (Dec. 10, 2014: same); Tr. 484 (Jan. 2, 2015: same); Tr. 1001 (March 3, 2015: anxious, constant talking, high pressure of speech, though recent and remote memory were normal); Tr. 997 (March 13, 2015: recent and remote memory were normal; alert and active although anxious); Tr. 990-93 (April 2, 2015: normal mood and affect; recent and remote memory normal but tested positive for methamphetamine). Plaintiff failed to establish how these clinical notes or the longitudinal objective medical evidence support Dr. Johnson's extreme opinion that Plaintiff's focus and concentration difficulties equate to an inability to work. Moreover, the RFC contained social, concentration, and pace limitations, limiting Plaintiff to tasks that can be learned in thirty days or less and involve no more than simple work-related decisions; few workplace changes; occasional and superficial public interaction; and casual or superficial interactions with coworkers with no involvement with highly interactive or interdependent work groups. Tr. 22. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Plaintiff also contends the ALJ failed to apply the appropriate analytical factors, citing 20 C.F.R. § 416.927(c) and *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017). ECF No. 15 at 9. The ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration. 20 C.F.R. § 416.927(c). But the ALJ is not required to make an express statement that he considered all the factors nor take each factor one-by-one, instead the record must reflect that the ALJ considered whether the opinion was supported by and consistent with the record. *Kelly v. Berryhill*, 732 Fed App'x 558, 562-63 n.4 (9th Cir. May 1, 2018) (unpublished opinion). Here, although at the hearing Plaintiff's counsel identified that Dr. Johnson was Plaintiff's personal physician, Tr. 76, the ALJ did not mention that Dr. Johnson was Plaintiff's treating physician nor identify the length of the treating relationship in the written decision. Nonetheless, the ALJ's reasons for rejecting Dr. Johnson's opinion speak to the § 416.927(c) factors and demonstrate that the ALJ's consideration of the opinion was in line with the regulation. The ALJ considered Dr. Johnson's contradicted opinions to be neither supported by his clinical notes nor the remaining objective medical findings. Tr. 28. While the ALJ's paragraph pertaining to Dr. Johnson did not detail each of the inconsistent medical records, the ALJ previously discussed the objective medical evidence relating to Plaintiff's exertional and non-exertional abilities. Tr. 20-21, 23-26. The ALJ also analyzed each of the medical opinions and explained how much weight he gave to each opinion and why. Tr. 26-28. The record reflects the ALJ considered Dr. Johnson's opinions together

with the other evidence and then, after setting out a detailed and thorough summary of the facts and conflicting clinical and opinion evidence, provided specific and legitimate reasons explaining why he discounted Dr. Johnson's opinion. Section 416.927(c) was satisfied.

### 2. *Dr. Kopp and Dr. Haynes*

In December 2014, Dr. Kopp and Dr. Haynes conducted an independent medical evaluation of Plaintiff for State Department of Labor and Industries purposes. Tr. 423-33. Dr. Kopp provided the orthopedic expertise and Dr. Haynes provided the neurological expertise. Dr. Kopp and Dr. Haynes reviewed the listed medical records and conducted a physical examination. Tr. 423-33. These physicians jointly opined that Plaintiff likely had deQuervain tenosynovitis, rather than carpal tunnel syndrome but that if Plaintiff had carpal tunnel syndrome it was relatively mild. Tr. 429. They opined that Plaintiff was not able to work at that time as a car hop as she needed to wear a wrist brace on her right wrist. Tr. 429-30. They opined that Plaintiff had no limits standing, walking, and sitting; was limited to lifting five pounds on her left side; restricted on her right side from pushing and pulling; and limited on her right side to simple non-repetitive grasping and manipulations. Tr. 429-30.

The ALJ assigned this opinion some weight. Tr. 27. Because this opinion was contradicted by the opinion of Dr. Leslie Arnold, Tr. 128-31, the ALJ was

required to provide specific and legitimate reasons for rejecting Dr. Kopp and Dr.

Haynes' opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Kopp and Dr. Haynes' opinion that Plaintiff

was limited to lifting five pounds and had manipulation, pushing, and pulling

restrictions because these restrictions were inconsistent with the clinical findings.

Factors to evaluating a medical opinion include the amount of relevant evidence

that supports the opinion and the consistency of the medical opinion with the

record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. A medical opinion

may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228;

*Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149.

Here, the ALJ noted that the clinical findings revealed that Plaintiff repeatedly

presented with intact upper extremity functioning. Tr. 27. For instance, a nerve

conduction study in June 2014 was normal, Tr. 427; during a December 2014

emergency room visit, Plaintiff had intact range of motion in all extremities, intact

sensation, steady gait, and intact motor functioning, Tr. 353-53; during a February

2015 exam, other than some bilateral wrist and neck tenderness, Plaintiff had

normal range of motion, sensory function, and elbow and wrist findings, Tr. 436-

37; and Plaintiff had normal motor strength, movement of extremities, and

ambulation in September 2015 and May 2016, Tr. 986, 1129, 1146-47. Plus,

Plaintiff's wrist x-rays in September 2015 were normal, Tr. 438, 442, and the

September 2016 neurological examination was normal, Tr. 1023. Based on the clinical findings that are inconsistent with the opined limitations, the ALJ's decision to discount Dr. Kopp and Dr. Haynes' opinion is a legitimate and specific reason supported by substantial evidence.

Second, the ALJ discounted Dr. Kopp and Dr. Haynes' opinion because it was inconsistent with Plaintiff's observed activities. Tr. 27. It is reasonable for an ALJ to consider a claimant's activities, which undermine claims of totally disabling pain. *Rollins*, 261 F.3d at 857. Here, the ALJ noted that Plaintiff was observed typing on her phone and manipulating small objects without apparent difficulty. Tr. 27. For instance, disregarding Dr. Toews' challenged observations, Plaintiff was observed in February 2015 texting with both hands with no apparent pain. Tr. 436, 438. Plaintiff was also frequently observed to ambulate normally with normal range of extremity movement. *See, e.g.*, Tr. 353, 437, 487, 493, 497, 503, 507, 518, 522, 986, 997, 1001, 1023, 1113, 1192. While Plaintiff's observed use of her phone is likely inadequate by itself to undermine Plaintiff's claims of disability, Plaintiff's frequent normal ambulation and the lack of longitudinal clinical findings supporting manipulation or postural limitations provides substantial evidence to support the ALJ's decision to discount Dr. Kopp and Dr. Haynes' opinion as inconsistent with Plaintiff's observed activities.

Third, the ALJ discounted Dr. Kopp and Dr. Haynes' opinion because Plaintiff was not at maximum medical improvement, thereby indicating that their opined restrictions were not permanent restrictions. Tr. 27. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Because Dr. Kopp found that Plaintiff was not at maximum medical improvement for her wrist injury and other limitations, Tr. 432, the ALJ rationally discounted Dr. Kopp and Dr. Haynes' opinion.

Finally, Plaintiff argues that the ALJ failed to consider the 20 C.F.R. § 416.927(c) factors. ECF No. 15 at 12-13. The ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration. 20 C.F.R. § 416.927(c). While the ALJ did not detail these factors in chronological order in one paragraph, the ALJ did consider the § 416.927(c) factors. The ALJ noted that Dr. Kopp and Dr. Haynes conducted a consultative medical evaluation, discussed the basis for their opinion, and compared the opinion to the record. The ALJ discounted these options because they were inconsistent with the clinical findings and because the opinion was

issued when Plaintiff was not at maximum medical improvement. The ALJ

adequately considered the applicable § 416.927(c) factors.

### 3. Ms. Mondragon

On January 11, 2016, Ms. Mondragon evaluated Plaintiff and completed

both an Initial Assessment form, Tr. 862-67, and a form for Department of Social

and Health Services (DSHS), Tr. 619-21. On the Initial Assessment form, Ms.

Mondragon identified that Plaintiff had a history of PTSD and major depressive

disorder (recurrent moderate) and that Plaintiff used cannabis daily to cope with

anxiety. Tr. 864. Ms. Mondragon opined that Plaintiff's inability to work or meet

other appropriate responsibilities would continue for six months or more without

treatment. Tr. 865. On the DSHS form, Ms. Mondragon diagnosed Plaintiff with

PTSD, major depressive disorder (recurrent moderate), and cannabis use

(moderate). Tr. 619. Ms. Mondragon stated that Plaintiff struggled with

"significant symptoms of anxiety that interfere with [her] ability to interact with

others, to stay in a crowded place for too long, [and cause] difficulty with

concentration and ability to follow instructions as directed." Tr. 619. Ms.

Mondragon also opined that Plaintiff's anxiety symptoms may exacerbate

outbursts of anger and feeling scared and panicked. Tr. 619. Based on Plaintiff's

mental and emotional issues, Ms. Mondragon opined that Plaintiff was limited to

working one to ten hours a week. Tr. 619.

The ALJ assigned Ms. Mondragon's opinion in the Initial Assessment little weight but did not discuss what weight was given to Ms. Mondragon's DSHS opinion. Tr. 27. Plaintiff challenges the ALJ's failure to discuss Ms. Mondragon's DSHS opinion. ECF No. 15 at 14-15. However, because Ms. Mondragon's DSHS opinion was consistent with and prepared the same day as the Initial Assessment opinion, any error by the ALJ in failing to discuss the DSHS opinion is harmless as no reasonable ALJ would reach a different disability determination based on the substantially similar and same-day opinions. *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1056 (9th Cir. 2006) (recognizing that an error is harmless if the court can confidently conclude that no reasonable ALJ, when considering the undiscussed opinion, would reach a different disability determination).

Because licensed mental health therapist Ms. Mondragon was an "other source," the ALJ was obligated to give a germane reason before discounting her opinion. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

First, the ALJ discounted Ms. Mondragon's opinion because it was based on Plaintiff's subjective reports, rather than objective medical findings. Tr. 27. Factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. A medical opinion may be rejected if it is based on a claimant's subjective complaints, which were

properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. A clinical interview and mental status evaluation are objective measures and cannot be discounted as a "self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ noted that Ms. Mondragon's report cited to Plaintiff's self-reports and that it included no testing of Plaintiff's functioning. Tr. 865. While Ms. Mondragon's report noted that Plaintiff completed PCL-5 and PHQ-9 tests, these tests were expressly based on Plaintiff's self-reports. Tr. 864 ("[A]s a client self-report"). There was no mention that Ms. Mondragon observed conduct by Plaintiff consistent with Plaintiff's reported limitations. Accordingly, on this record, the ALJ's decision to discount Ms. Mondragon's opinion because it was more heavily based on Plaintiff's properly discounted self-reports, *see supra*, than on objective medical findings is a germane reason, supported by substantial evidence.

Second, the ALJ discounted Ms. Mondragon's opinion because the determination of whether one can work is reserved to the Commissioner. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 416.927(d).

Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion, considering the evidence in the record, and applying the applicable 20 C.F.R. § 416.927(d) factors. SSR 96-5p at *2-3. Here, even though Plaintiff's ability to work is a matter reserved for the Commissioner, the ALJ evaluated Ms. Mondragon's opinion and determined that it was more heavily based on Plaintiff's discounted self-reports rather than objective findings. The ALJ's finding in this regard is rational and supported by substantial evidence.

Third, the ALJ discounted Ms. Mondragon's opinion because it appeared that she was unaware of Plaintiff's ongoing drug abuse. Tr. 27. The fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration when evaluating a medical opinion. *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016). Therefore, an ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, *8 (E.D. Wash. Aug. 19, 2013). While Ms. Mondragon was aware that Plaintiff was using marijuana daily, Ms. Mondragon was unaware that Plaintiff had also been abusing methamphetamine and narcotic pain prescriptions. Tr. 1212-16; *cf.* Tr. 855-60 (March 15, 2016 addendum material: noting no history of abuse alcohol or drugs).

Ms. Mondragon's lack of information about Plaintiff's ongoing drug abuse (beyond her marijuana use) when Ms. Mondragon completed her opinion in January 2016 is a germane reason to discount her opinion.

Fourth, the ALJ discounted Ms. Mondragon's "unable to work" opinion because it was outside her expertise as a mental health counselor. The ALJ is correct that Ms. Mondragon's opinion is entitled to less weight than that of an acceptable medical source. 20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, her credentials are not a germane reason for rejecting the opinion because ALJs are directed to consider medical evidence from all sources. 20 C.F.R. § 416.913(e)(2). Any error though in the ALJ's analysis was harmless because the ALJ identified other germane reasons to discount Ms. Mondragon's opinion. *See Molina,* 674 F.3d at 1115.

Finally, the ALJ discounted Ms. Mondragon's opinion because she did not identify whether she considered any vocational factors when concluding that Plaintiff was unable to work. Tr. 27. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan,* 169 F.3d at 601. Here, on the Initial Assessment form, Ms. Mondragon, noted that Plaintiff's psychological conditions impacted her ability to sleep and live independently and that she must rely on others for housing, food, and clothing. Tr. 864-65. On the DSHS form, which the

ALJ did not discuss, Ms. Mondragon stated that Plaintiff struggled with "significant symptoms of anxiety that interfere with [her] ability to interact with others, to stay in a crowded place for too long, [and cause] difficulty with concentration and ability to follow instructions as directed." Tr. 619. The ability to interact with others, follow instructions, and maintain concentration are vocational factors. Accordingly, the ALJ erred in discounting Ms. Mondragon's opinion because she did not consider vocational factors. However, any error in discounting Ms. Mondragon's opinion on this basis is harmless because the ALJ offered other germane reasons supported by substantial evidence—that Ms. Mondragon's opinion was based more heavily on Plaintiff's discounted self-reports than on objective medical evidence and issued without awareness of Plaintiff's ongoing drug abuse—to discount Ms. Mondragon's opinion. *See Molina,* 674 F.3d at 1115.

In summary, while the ALJ failed to discuss Ms. Mondragon's DSHS opinion, this error was harmless because the ALJ properly discounted Ms. Mondragon's similar Initial Assessment opinion on the grounds that it was too heavily based on Plaintiff's discounted self-reports and failed to account for Plaintiff's ongoing drug abuse.

ORDER - 45

*4. Dr. Toews*

On January 16, 2015, Dr. Toews performed a psychological evaluation of Plaintiff. Tr. 399-422. Dr. Toews was unable to diagnose Plaintiff due to a suspected secondary-gain motivation and opiate pain medication dependence. Tr. 408-09. Because there were inconsistences between Plaintiff's performance during the mental status examination and the test results, Dr. Toews determined it was too difficult to determine Plaintiff's residual functional status. Tr. 408.

The ALJ assigned this opinion little weight. Tr. 27. Because Dr. Toews' opinion was contradicted by the opinions of the State agency doctors Matthew Comrie, Psy.D., Tr. 113-15, and Bruce Eather, Ph.D., Tr. 131-32, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Toews' opinion. *See Bayliss*, 427 F.3d at 1216.

The ALJ discounted Dr. Toews' opinion because he did not include a functional assessment. Tr. 27. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan,* 169 F.3d at 601. Here, Dr. Toews stated "[i]t is difficult to determine [Plaintiff's] residual functional status" because Plaintiff exhibited poor motivation and effort. Tr. 408. Dr. Toews suspected secondary gain motivation. Tr. 408. Plaintiff argues that, while the ALJ properly gave Dr. Toews' opinion limited weight, the ALJ should have discounted Dr. Toews'

observations and findings as well. ECF No. 15 at 15-16. Plaintiff contends that Dr. Toews' opinion was based on incorrect observations and inappropriate attitudes toward claimants. Plaintiff did not cite legal authority to support her argument that the ALJ should have discounted Dr. Toews' observations as inaccurate and based on bias. Regardless of the accuracy of Dr. Toews' observations, Dr. Toews elected not to opine as to Plaintiff's residual function status. Accordingly, the ALJ appropriately discounted Dr. Toews' opinion because he did not translate Plaintiff's symptoms into specific functional deficits precluding work activity. The ALJ provided a specific and legitimate reason supported by substantial evidence to discount Dr. Toews' opinion. Moreover, the Court did not rely on Dr. Toews' challenged observations and findings in concluding that the ALJ's decision is rational and supported by the record.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 1, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 48